Doremus v. The Mayor, Aldermen and Commonalty of the City of New York.

charged, and it did not appear that the prosecution was prejudiced by the delay caused by the prisoner's default: *Held,* that it was a proper case to vacate the judgment entered on the forfeited recognizance.

APPLICATION to discharge judgment on forfeited recognizance.

---

ROBERT OGDEN DOREMUS *against* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

(Decided June 28th, 1875.)

Under the provisions of the statute (L. 1868, c. 565) fixing the compensation of coroners in the city and county of New York, by which all fees and expenses not provided for in said act, whether existing "by city or county usage, or by law charged by said coroners," are abolished, and the further act of 1871 (L. 1871, c. 462), by which such coroners are authorized in certain cases to employ a physician to make an *autopsy* or *external* examination of deceased persons, a coroner (in New York city) is not authorized to employ a scientific expert to make a chemical *analysis* of the remains of deceased persons to ascertain the cause of their death, or to make such an analysis of other substances in connection therewith.*

---

* By an act passed June 21st, 1875 (L. 1875, c. 620), the employment of scientific experts by coroners in the city of New York was provided for, and provision also made for the payment of such services rendered since Jan. 1st, 1872.

APPEAL by the plaintiff from a judgment of this court dismissing the complaint, entered on the report of Hon. Enoch L. Fancher, as referee, to hear and determine all the issues. The facts of the case are fully stated in the opinion of the referee on making his decision, which was as follows:

"The plaintiff is, by profession, a chemist. He brought this action to recover of the defendants for the services mentioned in the following items:

1. Toxicological analysis of the remains of the late
    John Powers, who died July 19, 1874....... $500 00
2. Toxicological analysis of the remains of the late
    Annie Powers, died July 22, 1874.......... 500 00
3. Toxicological analysis of the remains of the late
    Ellen Burke, died July 24, 1874............ 500 00
4. Chemical analysis of a sample of 'chow-chow,'
    and of a package of supposed 'Paris green'.. 250 00

    Total.............................. $1,750 00

"The account or bill for such services was certified by Henry Woltman, one of the coroners of the county of New York, to be correct. As the services had been rendered at the request of the coroner, in supposed connection with his duties touching proceedings for the arrest and commitment of offenders, the plaintiff presented his bill also to the district attorney. In the reply of that officer, he says: 'It seems quite clear to me that the certificate of the coroner is all that is required to make your bill a proper county charge. He is a county officer, bound to ascertain the cause of death, and any expenses reasonably and in good faith incurred by him in the discharge of that duty should be paid by the county upon his certificate.'

"The account or bill was duly verified by the plaintiff, and presented to the finance department of the city of New York for allowance and payment, which were refused.

"It appears that the services were rendered on the special request of the coroner, and the charges are the usual charges for like services. The plaintiff testified that he had a conversation respecting the matter with the comptroller after the serv-

ices were performed mentioned in the first item of charges, and before the services were performed mentioned in the other items, though after the decease of the subjects, when the comptroller said he would consult the district attorney and get his opinion. Afterwards the plaintiff again saw the comptroller, when he requested the plaintiff to go on with the analysis, and stated that he would look after the payment of his bills for the services. The comptroller was informed that the coroner had requested the analysis to be made by the plaintiff.

"There is, therefore, no doubt that the services were performed in good faith, and by reason of such requests as led the plaintiff to suppose his charges would be allowed and paid by the county. No question is made that the amounts of the charges are not usual and reasonable.

"The answer to the complaint denies that the county of New York, or its legal agent, ever authorized or employed the plaintiff to do or perform the labor or services alleged; it denies knowledge or information sufficient to form a belief, as to the reasonable worth of the services, or that the plaintiff has demanded payment of the claim.

"Upon the trial, two points of defense were made: 1. No appropriation out of which the claim could be paid; 2. The services were not rendered by authority sufficient to make the charges therefor a valid claim against the county of New York or against the defendants.

"By section 39, chapter 12, part 1, title 2, of the Revised Statutes, 1 R. S. 5th ed. p. 855, it is provided: 'All fees and accounts of magistrates and other officers, for criminal proceedings, including cases of vagrancy, shall be paid by the several towns or cities wherein the offense shall have been committed, and all accounts rendered for such proceeding shall state where such offense was committed, and the board of supervisors shall assess such fees and accounts upon the several towns or cities designated by such accounts.'

"This provision, together with the late act of the Legislature consolidating the county and city of New York (chap. 304, Laws of 1874), providing that 'for all purposes the local administration and government of the city and county of New

York shall be in and be performed by the one corporation,' composed of the defendants; and that 'all charges and liabilities existing against said county shall be deemed and taken to be charges against or liabilities of said corporation, and shall be defrayed or answered unto by it,' are sufficient to show that this action is properly brought against the city, provided the claim of the plaintiff is a county liability.

"I do not think the objection that no appropriation was made to pay the claim is any defense. The claim is not made by any officer of the city of New York, nor by any one attached to any of the departments of the city government. The question in the case is whether the claim is a county liability. The accounts of coroners are made by the Revised Statutes a county charge (1 R. S. 5th ed. 902, § 3, subd. 8), and they are county officers. The Revised Statutes, in the enumeration of what shall be deemed county charges, contain, also, the following provision: 'The moneys necessarily expended by any county officer in executing the duties of his office, in cases in which no specific compensation for such services is provided by law' (Id. p. 902). Had coroner Woltman, who directed the plaintiff to perform the service for which the claim is made in this action, paid the claim, it would, under the Revised Statutes, have been an expense, or money necessarily expended, in the execution of the duties of his office; and he would have been entitled to reimbursement from the county, under the statute, as it stood prior to 1868. There may be a question whether the coroner was not liable to the plaintiff according to the doctrine laid down by the Supreme Court in the case of *Van Hoevenbergh* v. *Hasbrouck* (45 Barb. 197). That, however, was a case where the coroner's liability was asserted because the services were rendered at his request, without any stipulation or notice that the expert must not look to the coroner personally. Here there was a notice, or rather an understanding, that the plaintiff should be entitled to look directly to the county for his compensation.

"It has been held that to charge a county with a claim for services rendered or expenses incurred, there must be some *statutory authority* under which the services were rendered or

the expenses incurred (*People* v. *Supervisors of Albany*, 28 How. Pr. 25).

" The statute already cited was prior to 1868, and was authority for the audit by the board of supervisors of the accounts of coroners for moneys necessarily expended in executing the duties of their office ; and it was held in *People ex rel. Hall* v. *Board of Supervisors of New York* (32 N. Y. 473), that moneys are ' necessarily expended,' within the meaning of the statute for the protection of county officers, when the expenditures are needful and proper, and such as are customary in the execution of the particular official duty. In this case, the testimony shows that services, similar in character to those for which the plaintiff claims, had frequently before been rendered on the application of coroners, and had been charged to and paid by the county. It was held in *People* v. *Beigler* (3 Parker's Crim. Rep. 316), that the power of a coroner is to be measured by that of justices of the peace throughout the State. Justices of the peace are named among the magistrates having jurisdiction of proceedings to prevent the commission of crimes, and of proceedings for the arrest, examination and commitment of offenders. Coroners are also authorized by statute to issue process for the apprehension of any party charged with certain offenses by the jury at inquests where persons have suddenly died. Were it not for chapter 565 of the Laws of 1868, I think the employment of the plaintiff, in the professional services which he has rendered, would have been justified by the circumstances, and that the coroner would have had the power to direct the analyses which were made. The coroner would have acted as the agent of the county in so doing (*People ex rel. Johnson* v. *Supervisors of Delaware Co.* 45 N. Y. 196), and the claim for such services would have been regarded as a proper county charge.

" In *People ex rel. Sherman* v. *Supervisors of St. Lawrence Co.* (30 How. Pr. 173), it appeared that the district attorney of that county had employed the relator ' as a chemist, to make a chemical analysis of certain bread and butter,' where a criminal charge of poisoning was involved against certain persons. The charge for the services was in part disallowed by the su-

pervisors. The determination of the board of supervisors was held conclusive as to the audit of the claim, and a mandamus was denied to require a further audit. But the court, in reference to the services, said : ' The services charged for in the account rendered were properly charged for against the county. They were ordered by an officer of the county, within the sphere of his duty and scope of his authority. They were necessary to the proper administration of criminal justice in the one case, and to a proper inquiry of the crime in the other, and the board, by its action, acknowledged the liability of the county, and the right of the relator to compensation.' Under the Revised Statutes, I think a similar authority existed in a coroner, where he deemed it necessary, in the course of his official duty, to order an examination and analysis, such as were made by the plaintiff; and that when the services had been performed, the charge therefor would have been properly made against the county.

"It has been frequently held that wherever services have been rendered, which are beneficial to a county, and no specific compensation is provided for the same by law, they shall be deemed contingent charges against the county (18 Johns. 262 ; 2 Cow. 583 ; 12 Wend. 257 ; 2 Sandf. 460 ; 2 N. Y. Supreme Court Rep. 24). But the services rendered by the plaintiff were performed *after* the act of 1868 (chapter 565), which provides: '§ 1. The supervisors of the county of New York are hereby directed to audit the bills of the coroners of the city and county of New York, as follows : For viewing each dead body and holding an inquest thereon, the sum of ten dollars; for summoning and swearing a jury in each inquest, five dollars ; and all other fees *or expenses* now existing, whether by city or county usage, or by law, charged by said coroners, are hereby abolished.' The effect of this enactment, I think, was to limit the authority of coroners in respect of their own charges, and as well in respect of authorizing a county expense to the items enumerated in the statute. Until 1871 such limitation existed. In that year (chapter 462, Laws of 1871), it was enacted as follows : '§ 1. Hereafter, when, in the city and county of New York, any person shall die from

Doremus v. The Mayor, Aldermen and Commonalty of the City of New York.

criminal violence * * * * the coroner shall subpœna a properly qualified physician, who shall view the body of such deceased person externally, or make an autopsy thereon as may be required. * * * * For making such external examination the physician shall receive three dollars; for making such autopsy he shall receive ten dollars, and such sums shall be a county charge, and paid by the board of supervisors.' But for the act of 1868, there would not have been any necessity for the act of 1871 ; and the passage of the latter act, enlarging the authority of coroners in New York at inquests, and providing for the charges of physicians as therein specified, serves to throw light on the intent and interpretation of the act of 1868, which, I think, limits the authority of coroners in New York, in respect of their own charges, *and in respect of any expenses they can authorize*, to the items mentioned in the statutes of 1868 and 1871. The services of the plaintiff were meritorious, and it is with regret that I arrive at the conclusion above stated. But under the law as it now exists, I cannot allow his claim, and there must be a report for the defendants."

*A. Oakey Hall*, for appellant.

*E. Delafield Smith*, for respondent.

LARREMORE, J.—The able and exhaustive opinion of the referee before whom this case was tried, leaves nothing for review but the single conclusion of law upon which his decision is based.

The plaintiff, an eminent chemist of this city, was employed by one of its coroners to make " toxicological analysis of the remains of certain persons who had died under suspicious circumstances, tending to the belief that they had been feloniously poisoned." There is no dispute as to the necessity, value, or efficiency of the services thus rendered.

The only obstacle to a recovery therefor, is an alleged want of authority on the part of the coroner to incur such expense as a county liability.

Under the ruling in the *People ex rel. Sherman* v. *Supervisors of St. Lawrence Co.* (30 How. 173), there could be little doubt of the validity of plaintiff's claim, as the law then stood, for

the services rendered by him were necessary to the proper execution of an official duty. But we are met by recent legislation on the subject, viz., "An act fixing the compensation of the coroners of the city and county of New York" (Laws 1868, chap. 565), which fixes the rate of fees of said officers for each specific service performed by them, and enacts (§ 1), that "all other fees or expenses now (then) existing, whether by city or county usage or by law, charged by said coroners, are hereby abolished."

This limitation of authority by the said coroners to incur expense, was succeeded and explained by a subsequent act of the Legislature, passed April 13, 1871 (Laws 1871, chap. 462), which provides for the employment by said coroners, of a properly qualified physician, to make an external examination or autopsy of any person who shall die from criminal violence, etc., or in any suspicious or unusual manner. The compensation of the physician thus employed, is fixed by said act as follows: three dollars for making such external examination, and ten dollars for making such autopsy.

These two modes of examination appear to have been all that (in the contemplation of the Legislature), were necessary for the discovery of crime in the case of a death occurring in any suspicious or unusual manner.

That the act of May 4th, 1868, was not intended to authorize expenditures by said coroners, except as therein specifically provided, is evident by the passage of said act of April 13th, 1871, which would have been unnecessary, if authority *previously* existed to make such examination or autopsy.

In view of this latter statute, no authority can be inferred, for the making of any examination imposing a county charge except as therein designated.

Fully recognizing the utility and necessity of chemical analyses in furtherance of justice and the detection and punishment of crime, I am forced to the conclusion that plaintiff's services, however meritorious, were unauthorized, and his appeal should be addressed to the Legislature and not to the court.

CHARLES P. DALY, Ch. J., and ROBINSON J., concurred.

Judgment affirmed.